F. L. GRAF, RESPONDENT, v. NATIONAL STEEL PRODUCTS CO., EMPLOYER; LONDON GUARANTY AND ACCIDENT COMPANY, INSURER, APPELLANT.—38 S. W. (2d) 518.

Kansas City Court of Appeals. Opinion filed May 4, 1931.

*Edwin H. Garrett* for respondent.

*David R. Derge* and *Winger, Reeder, Barker, Gumbiner & Hazard* for appellant.

BLAND, J.—This is an appeal by the defendants, the employer and the insurer, from a judgment against them affirming an award of the Workmen's Compensation Commission in favor of claimant, the employee.

The facts show that on July 25, 1928, the claimant, F. L. Graf, sustained an injury by reason of an accident arising out of and in the course of his employment with the defendant, National Steel Products Company. The injury consisted of a cut to the left eye made by a piece of drill bit which broke off and flew into claimant's eye while he was using an electric drill in the plant of the employer.

The evidence shows that claimant has actually suffered loss of visual efficiency of the left eye to the extent of 94.6 per cent. but with the use of corrective lenses or eye-glasses he has suffered a loss of only 20.8 per cent of visual efficiency. The commission awarded claimant 102.168 weeks compensation in the sum of $2039.11, less a credit of $18.91 theretofore paid claimant. The award was based upon the theory that he had suffered the loss of visual efficiency of the left eye to the extent of 94.6 per cent. The sole question for determination is whether the commission should have based its award upon the theory that claimant has lost 20.8 per cent. visual efficiency of the eye instead of 94.6 per cent.

Defendants contend that compensation in this case should be based upon the loss of vision when corrected, as far as possible, with the use of corrective lenses or eye-glasses, and in support thereof cite the cases of Frings v. Pierce Arrow Motorcar Co., 169 N. Y. S. 309; Valentine v. Sherwood Metal Working Co., 178 N. Y. S. 494; McNamara v. McHarg-Barton Co., 192 N. Y. S. 743; Cline v. Studebaker Corporation, 155 N. W. 519, and Travelers' Insurance Co. v. Richmond, 291 S. W. 1085. Defendants' contention is mainly based upon the following, quoting from their brief:

"The whole principle of the Missouri Workmen's Compensation Act is the provision of compensation to an injured employee for a disability which he has suffered which will affect his wage earning capacity, and the purpose of the act is also to attempt to compensate such employee to the extent of the proportionate loss of wage earning capacity. Liability of the employer and insurer is limited to the loss of earnings and wage earning capacity without regard to any damages at common law."

An examination of the cases cited by defendant shows that they are all founded upon compensation laws different from ours. That is to say, they are based upon laws providing for compensation for disability, or impairment of ability, to work, or for loss of earning power, and not upon the theory of indemnity for the loss of a member or physical impairment as such.

If our law is to be given the construction contended for by defendants, then the cases cited by them might be in point. But defendants misconstrue the theory of our law, which is based upon disability due to the loss of a member or a part of a member or function and not upon diminition of earning power by reason of the loss of function. [Lynch v. Gleaner Combine Harvester Corp., 17 S. W. (2d)

554, 556; Betz v. Columbia Telephone Co., 24 S. W. (2d) 224.] There is nothing in our law suggesting that its benefits should be made 'to depend upon a substitution of artificial aids for the loss of one's God given faculties, which aids are attendant with all of the handicaps and, oft'times, uncertainties that the word "artificial" implies. There is no claim of any express provision in our law providing that disability should be based upon a loss of function when corrected, as far as possible, with artificial aids or mechanical means. We are not justified in reading into the law anything that is not contained therein, especially, when to do so would be contrary to its spirit and intent. It was well said in the case of Alessandro Petrollo Co. v. Marioni, 131 Atl. 164 (Del.):

"It may be true that an artificial instrumentality, such as glasses or a corrective lens may subsequently be used, by virtue of which the loss of vision may be reduced from eighty per cent to ten per cent during the time such glasses are actually in use, but the loss suffered by the injury remains the same and is the compensable basis.

"If eighty per cent of the vision of an eye is destroyed in an accident and yet the injured person while actually using specially prepared glasses can obtain his normal sight, can it be successfully contended that no loss or injury at all has been sustained? Such a position is, indeed, difficult to maintain.

The very fact that artificial instrumentalities such as glasses, braces, and artificial limbs are necessary to be used is in itself evidence of the permanency of the injury, but the use of the mechanism itself, although it may allow a member to function with entire normality, yet it cannot obliterate the effect of the accident causing the injury.

.    .    .    .    .    .

A number of cases are cited to us from the jurisdiction of New York, Pennsylvania and Michigan as having arrived at different conclusions from the one herein reached. It may be sufficient to suggest that these cases are determined upon their particular statutory enactments. Most or all seem founded upon statutes based upon the theory that compensation was only payable in cases such as the present one when the accident led to loss of earning power." [See, also, Johannsen v. Union Iron Works, 117 Atl. 639 (N. J.); Marland Refining Co. v. Colbaugh, 238 Pac. 831 (Okla.).]

There is nothing in section 13 (d) of our Compensation Act (see Laws 1927, p. 498, and section 3311 (d), Revised Statutes 1929) providing that "no compensation shall be payable for the death or disability of an employee if and in so far as the same may be caused, continued or aggravated by an unreasonable refusal to submit to any medical or surgical treatment or operation," etc., bearing out defendants' contention that compensation should be based upon loss of vision when corrected, as far as possible, with corrective lenses because

the use of such "would minimize the loss of vision materially." [Marland Refining Co. v. Colbaugh, supra, loc. cit. 832, 833.]

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.