### J. C. HAMILTON CO. et al. v. BICKEL et al.

No. 25104.   Oct. 1, 1935.

Pierce, Follens & Rucker, for petitioners.
Chas. Hill Johns and Houston E. Hill, for respondent Beryl Bickell.

PHELPS, J.   The only question presented in this action by the insurance carrier and employer to review an order and award of the State Industrial Commission in favor of the employee is whether the injury "arose out of" the employment within the meaning of the Workmen's Compensation Act.

While the claimant was engaged in his duties, and at the instant when he was walking out of a building, a fellow employee took hold of his shoulder and a playful scuffling or wrestling took place, the two of them falling and claimant breaking his leg.

The petitioners proceed on the theory that claimant's injury was the result of his own active participation in what has heretofore been termed "horseplay" by this court in Willis v. Industrial Comm., 78 Okla. 216, 190 P. 92, Marland Refining Co. v. Colbaugh, 110 Okla. 238, 238 P. 831, and Roxana Petroleum Corp., v. State Industrial Comm., 134 Okla. 181, 272 P. 847, in which cases it was held that although recovery may be had by an employee who is injured by the prank of a fellow employee, he may not recover if he was an active participant in such conduct.

In claimant's brief the facts are treated as if he had actually been an "active participant," but it is argued that, even so, the rule of "active participation" in the foregoing cases is merely dictum; and then the claimant cites authority from a few other jurisdictions to the effect that active participation does not prevent recovery if the injury was occasioned while on the job.

Neither side to this controversy has called to our attention the really determinative point in the case, and that point is: In all of the claimant's testimony he strenuously denied active participation, and although the petitioners' (respondents below) witnesses testified to facts which if true would certainly constitute active participation, still, the situation thereby created constituted merely a conflict of evidence, which conflict was solely for the Commission's determination.   It is true that the insurance carrier did introduce in evidence a signed statement of claimant, which was executed prior to the hearing, which might be construed as an admission of active participation; but, in the first place, the claimant repudiated the statement, and, in the second place, this was a part of the insurance carrier's evidence and not the claimant's, and therefore it was merely a part of the evidence to be considered by the Commission and was not conclusive against the claimant.   Had the claimant in any manner admitted active participation, then we would have here a question of law, and would be confronted with the task of deciding whether to adhere to the rule of "active participation" as announced in the cases, supra, or to recede therefrom.

We have carefully examined the record. On claimant's side of the case no witness testified concerning the scuffling other than the claimant himself.   The following excerpts from his testimony are reflective of his entire narration of facts on the particular question of whether he actively participated in the scuffling, and it is noticeable therein that he emphatically denied such active participation:

"A. It was ten minutes to six in the evening. I kept my truck in the alley and was putting it up for the night and on my way back this man Miley was there, and he reached out and grabbed me as I went by and we scuffled around a little but I did not want to scuffle with him. Suddenly my leg gave way as I tried to stand on it and they took me to the hospital and found out it was broke. * * * Q. And he reached out and grabbed you? A. Yes, sir. Q. What did you do then? A. I tried to pull away, and in the meantime I dropped my coat and swung around and was on my back before I knew it. * * * Q. Did you make any movement, or was there anything in your actions in walking back to the battery department that could have caused that fellow employee to grab at you as you went by? A. No, sir. Q. You did not solicit that at all? A. No, sir. * * * Q. After you jerked away, what then? A. I did not jerk away; I tried to. Q. What then? A. He was on my back and he grabbed me on the chest, and then my leg gave way. Q. Were you trying to free yourself. A. Yes, I was trying to free myself. Q. As an actual matter of fact, was not this scuffle mutual on the part of you and Mr. Miley? A. No I made no advance at all toward the scuffle. I was going on back to the shop to take care of my duties. Q. Would you say you took no part in the scuffle at all? A. I was a part of it, but I did not start it in any way. I was trying to free myself. * * *"

Thus the Commission was authorized to believe, if it so desired, that the claimant did not actively participate in the scuffling or wrestling which caused his injury. Of course, the claimant participated, in the sense that anyone must necessarily participate in a scuffle wherein he has been set upon by another. But he was attempting to free himself from the scuffling. Though it was participation, it was not active or voluntary participation.

Where there is evidence reasonably tending to support the finding of the State Industrial Commission, that finding will not be disturbed by this court on review. Therefore, the only question of law in this case is whether the injury arises out of the employment, within the meaning of the Workmen's Compensation Act, where claimant, going about his duties, is injured by the prank of his fellow employee, in which prank the claimant is not an active participant.

That question was answered affirmatively in Willis v. State Industrial Comm., 78 Okla. 216, 190 P. 92; Marland Refining Co. v. Colbaugh, 110 Okla. 238, 238 P. 831, and Roxana Petroleum Corp. v. State Industrial Comm.,

134 Okla. 181, 272 P. 874, and the reasons for the rule were sufficiently discussed in those cases.

The award is affirmed.

McNEILL, C. J., and BAYLESS, WELCH, and CORN, JJ., concur.